**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**DA SILVA TRAJANO, TIAGO**

*Plaintiff,*

*v.*

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**
Office of the Chief Counsel,
5900 Capital Gateway Drive,
Mail Stop 2120,
Camp Springs, MD 20588-0009;

**SECRETARY OF HOMELAND SECURITY**
2707 Martin Luther King Jr. Ave SE,
Mail Stop 0485,
Washington, DC 20528-0485;

**JOSEPH B. EDLOW, in his official capacity as Director of the U.S. Citizenship and Immigration Services,**
5900 Capital Gateway Drive
Camp Springs, MD 20588-0009

**THE HONORABLE KRISTI NOEM, in her official capacity as Secretary of Homeland Security**
2707 Martin Luther King Jr. Ave SE,
Mail Stop 0485,
Washington, DC 20528-0485;

**UNITED STATES ATTORNEY FOR THE DISTRICT OF MASSACHUSETTS**
John Joseph Moakley U.S. Courthouse,
1 Courthouse Way, Suite 9200,
Boston, MA 02210,

*Defendants.*

**Civil Action No.: To be assigned**

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**

## I. INTRODUCTION

1. Plaintiff Tiago da Silva Trajano (hereinafter "Plaintiff" or "Mr. Trajano"), by and through his undersigned counsel, hereby files this Complaint for declaratory and injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201-2202, and 5 U.S.C. §§ 701 et seq.

2. The Plaintiff brings this action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, seeking judicial review of the United States Citizenship and Immigration Services' ("USCIS") arbitrary and capricious denial of Plaintiff's Form I-140, Immigrant Petition for Alien Worker in the EB-1A Extraordinary Ability category, and the subsequent dismissal of Plaintiff's Form I-290B motion to reopen or reconsider by the Administrative Appeals Office ("AAO").

3. Plaintiff, a renowned and internationally recognized tattoo artist, meets the regulatory standards for classification as an individual of extraordinary ability in the arts, having demonstrated eligibility under five of the ten criteria listed in 8 C.F.R. § 204.5(h)(3). Despite established eligibility under three of the regulatory EB-1 criteria and thus met the objective evidentiary threshold required, the USCIS and the AAO denied and dismissed Plaintiff's petition on the basis of subjective, vague, and inconsistently applied standards, failing to properly weigh the submitted evidence in violation of the APA.

4. In support of his Complaint, Plaintiff states as follows:

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff brings this action

under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, which provides for judicial review of final agency actions where no other adequate remedy exists in court.

6. Specifically, the Plaintiff seeks review of the United States Citizenship and Immigration Services' (USCIS) final denial of his Form I-140 immigrant petition and the subsequent dismissal of his Form I-290B Motion to Reopen or Reconsider by the Administrative Appeals Office (AAO), both of which constitute final agency actions within the meaning of the APA. See 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

7. The relief sought by Plaintiff—vacatur and remand of the agency's denial for legal error—falls squarely within the scope of judicial review authorized by 5 U.S.C. § 706, which empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1), which provides that a civil action in which a defendant is an officer or agency of the United States may be brought in any judicial district in which: (A) **a defendant in the action resides**; (B) a substantial part of the events or omissions giving rise to the claim occurred; or (C) the plaintiff resides, if no real property is involved in the action.

9. Because the Plaintiff currently resides within the District of Massachusetts, and because this action does not involve any real property, venue is properly laid in this Court pursuant to § 1391(e)(1)(C).

10. Additionally, no exhaustion of administrative remedies is required under the APA when the plaintiff challenges a final agency action and there is no statutory requirement to exhaust further appeals. Plaintiff has exhausted all available administrative remedies by pursuing

a Motion to Reopen/Reconsider through Form I-290B, which was denied by the AAO on April 9, 2025. The decision is final and ripe for judicial review.

## III. PARTIES

11. Plaintiff is a noncitizen currently residing in the United States with a pending Application for Adjustment of Status (AOS). Plaintiff is not in removal proceedings and filed an I-140 petition for EB-1A classification based on extraordinary ability in the field of tattoo artistry. The petitioner, Mr. Trajano, has substantiated his claim of achieving extraordinary ability within the field of tattoo artistry in his I-140 petition, which was erroneously denied by the United States Citizenship and Immigration Services.

12. Defendant Joseph B. Edlow is the Director of United States Citizenship and Immigration Services ("Defendant," "USCIS"), a subordinate agency of the Department of Homeland Security ("DHS," "Defendant") which is an executive agency of the United States, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). DHS assumed responsibility for immigration benefits adjudication from the former Immigration and Naturalization Service on March 1, 2003, to administer its responsibilities under the Immigration and Nationality Act (INA), including adjudicating petitions for immigrant visas on behalf of persons with "extraordinary ability" pursuant to 8 U.S.C. § 1153(b)(1)(A). DHS has delegated this authority to its subordinate agency, USCIS. Defendant Edlow is sued in his official capacity.

## IV. BACKGROUND

13. The current statutory scheme for immigrant visas which includes the "extraordinary ability" immigrant visa classification was created in the Immigration Act of 1990 ("IMMACT90"). The intent of Congress behind the passage of this legislation, which was signed into law by President George H.W. Bush, was to facilitate the admission of highly

skilled immigrants to the benefit of the economy and to increase the competitive edge of the United States in attracting the "best and the brightest" in the global labor market.

14. In fact, IMMACT90 was created by Congress for express of "**eas[ing]** current U.S. immigration law restrictions" that "severely limit the number of highly skilled or otherwise needed foreign-born workers who may become lawful permanent residents of the United States." *See* H.R. REP. 101-723(I), 101ST Cong., 2nd Sess. 1990, 1990 U.S.C.C.A.N. 6710, 1990 WL 200418 (Leg.Hist.).[1]

15. When signing IMMACT90 into law, President Bush stated, "Today I am pleased to sign S. 358, the "Immigration Act of 1990"—the most comprehensive reform of our immigration laws in 66 years. This Act recognizes the fundamental importance and historic contributions of immigrants to our country. S. 358 accomplishes what this Administration sought from the outset of the immigration reform process…increased immigration of skilled individuals to meet our economic needs... S. 358 dramatically increases the number of immigrants who may be admitted to the United States because of the skills they have and the needs of our economy. This legislation will encourage the immigration of exceptionally talented people, such as scientists, engineers, and educators." *See* 1990 U.S.C.C.A.N. 6801-1, 1990 WL 300998 (Leg. Hist.).

16. The INA allocates a certain number of visas for immigrants (leading to lawful permanent resident status, or the "green card") possessing "extraordinary ability in the sciences,

[1] Counsel for the Plaintiff notes that Defendant and many Courts across the country have regularly quoted from or cited to two cases with regard to the supposed intent of Congress to support the need for a *Kazarian* analysis. The first comes from *Lee v. Ziglar*, citing to no authority, in which the district court states, "[t]he regulations regarding this preference classification are extremely restrictive." *Lee v. Ziglar*, 237 F. Supp. 2d 914 (N.D. Ill. 2002). The second comes from *Noroozi v. Napolitano*, which states, "As CIS noted, Congress intended to 'set a very high standard for individuals seeking immigrant visas in the extraordinary ability classifications.'" *Noroozi v. Napolitano*, 905 F. Supp. 2d 535 (S.D.N.Y. 2012) (citing 56 Fed.Reg. 60897, 69898-99 (Nov. 29, 1991)). In fact, the 1991 implementing regulation attached as Exhibit A to this Complaint actually states, "the rule's standards governing 'extraordinary ability' are comparable to the Schedule A/Group II standards governing 'exceptional ability' and the rule's standards governing 'exceptional ability' are less restrictive than the Schedule A/Group II standards governing 'exceptional ability.'" 56 FR 60897-01 at 60898.

arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A)(i). In addition, by statute a petitioner must demonstrate that the beneficiary seeks to enter the United States to continue work in his or her area of extraordinary ability, and that the beneficiary's alien's entry into the United States will substantially benefit prospectively the United States. 8 U.S.C. § 1153(b)(1)(A)(ii)-(iii).

17. While the INA does not define "extraordinary ability," the plain language meaning of "extraordinary" is "going beyond what is usual, regular, or customary" or "exceptional to a very marked extent" per Merriam-Webster.[2]

18. The federal regulations implementing IMMACT90, which were published as a final rule in 1991, however, dramatically narrowed the plain language understanding of what it means to be "extraordinary" as meaning "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 CFR § 204.5(h)(2).

19. Per the 1991 regulations, a petitioner seeking "extraordinary ability" immigrant visa classification on behalf of a beneficiary (or a self-petitioner/beneficiary) must first submit evidence of either the beneficiary's one-time achievement, such as a major internationally recognized award, 8 CFR § 204.5(h)(3), or, in the alternative, evidence of at least three of the ten other types of achievements specified by regulation, 8 CFR § 204.5(h)(3)(i)-(x).

20. The alternative evidentiary criteria are:

a. Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

b. Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

---

[2] See https://www.merriam-webster.com/dictionary/extraordinary (Last visited on August 5, 2025).

c. Published material about the alien in professional or major trade publications or other major media, relating to the beneficiary's work in the field for which classification is sought (the evidence must include the title, date, and author of the material, and any necessary translation);

d. Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

e. Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

f. Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

g. Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

h. Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

i. Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

j. Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 CFR § 204.5(h)(3)(i)-(x).

21. If the above alternative criteria do not readily apply to the alien's occupation, the petitioner is permitted to submit comparable evidence to establish the beneficiary's eligibility. 8 CFR § 204.5(h)(4).

22. The regulations in effect at all relevant times with respect to the Plaintiff's visa petition filing and denial through the present time are verbatim those published by the legacy INS in the 1991 final rule. *See* 56 Fed. Reg. 60,905, Nov. 29, 1991.

23. In 1995, the legacy INS published a proposed rule (the "failed proposed rule") to amend the regulations on employment-based immigrant visa petitions. This proposed rule went through notice and comment, prior to being withdrawn by the agency. *See* 60 Fed. Reg 29,771, June 6, 1995. The failed proposed rule stated:

> The current regulation at 8 CFR 204.5(h)(2) defines extraordinary ability as a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of a field of endeavor. The regulation lists evidence which needs to be presented to establish extraordinary ability. See 8 CFR 204.5(h)(3). Since the implementation of IMMACT, there has arisen some confusion over the role of various types of evidence listed in 8 CFR 204.5(h)(3). The evidence listed is intended to be a guideline for the petitioner and the Service to determine extraordinary ability in order to make the adjudicative process easier for both the petitioner and the Service. The fact that an alien may meet three of the listed criteria does not necessarily mean that he or she meets the standard of extraordinary ability. The Service adjudicator must still determine whether the alien is one of that small percentage who have risen to the very top of his or her field of endeavor. Accordingly, the Service proposes to amend the regulations to state that meeting three of the evidentiary standards is not dispositive of whether the beneficiary is an alien of extraordinary ability.

*Id.* at 29,775.

24. The failed proposed rule would have amended the 1991 regulations to redesignate 8 CFR § 204.5(h) to 8 CFR § 204.5(i), and would have revised newly redesignated paragraph (i)(4) to read as follows:

> **§ 204.5 Petitions for employment-based immigrants.**
> **** *
> (i) * * *
> (4) If the above standards do not readily apply to the beneficiary's occupation, the petitioner may submit comparable evidence to establish the beneficiary's eligibility. Meeting three of the evidentiary standards listed in paragraph (i)(3) of this section is not dispositive of whether the beneficiary is an alien of extraordinary ability. The petitioner has the burden of proof to establish that he or she is an alien of extraordinary ability.

*Id.* at 29,779-80. In other words, the failed proposed rule suggested for the first time that the legacy INS would conduct a "second step" determination of eligibility for a visa as an alien of extraordinary ability. As noted above, legacy INS withdrew that proposed rule after notice and comment.

25. In 1992, the then Director of the legacy INS Northern Service Center, James Bailey, sought guidance on adjudication standards for I-140 petitions for individuals with extraordinary ability and outstanding professors and researchers. On July 30, 1992, legacy INS

Acting Associate Commissioner of Examinations Lawrence Weinig issued a letter in response. He stated:

> The evidentiary lists were designed to provide for easier compliance by the petitioner and easier adjudication by the examiner. The documentation presented must establish that the alien is either an alien of extraordinary ability or an outstanding professor or researcher. If this is established by the meeting [of] three of the criteria for extraordinary aliens or two of the criteria for outstanding professors or researchers, this is sufficient to establish the caliber of the alien. There is no need for further documentation on the question of the caliber of the alien. However, please note that the examiner must evaluate the evidence presented. This is not simply a case of counting pieces of paper.

The July 30, 1992 agency guidance from Acting Associate Commissioner Lawrence Weinig in response to the letter from legacy INS Northern Service Center (now the USCIS Nebraska Service Center, which issued the denial in this case) Director James Bailey was published at 69 Interpreter Releases 1049, Appendix I (Aug. 24, 1992).

In 1994, a federal district court in Michigan court cited and relied upon the July 30, 1992 agency guidance authored and released publicly by legacy INS Acting Associate Commissioner for Examinations Lawrence Weinig. *See Buletini v. INS,* 860 F. Supp. 1222 (E.D. Mich. 1994).

26. The court in *Buletini v. INS* held that:

> It is an abuse of discretion for an agency to deviate from the criteria of its own regulation. Once it is established that the alien's evidence is sufficient to meet three of the criteria listed in 8 C.F.R. § 204.5(h)(3), the alien must be deemed to have extraordinary ability unless the INS sets forth *specific and substantiated* reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard (emphasis added).

> These cases, along with others, created a framework that petitioners and [Immigration Service Officers] alike used to explain how an individual met the regulatory requirements or lacked the requisite evidence. All of the cases come to the same general conclusion: the petitioner must demonstrate that the beneficiary meets the regulatory requirements for the preference category sought and the adjudicator is limited to the requirements set forth in the regulation when evaluating the submitted evidence.

Both the legacy INS guidance and the *Buletini* district court decision were also cited by the agency's own Ombudsman in its December 29, 2011 Report on Extraordinary Ability Adjudications.

27. In 2006, in *Kazarian v. USCIS*, the Ninth Circuit Court of Appeals considered the appeal of the district court's grant of summary judgment to USCIS, finding that USCIS's denial of an "extraordinary ability" immigrant visa classification to a community college tutor and adjunct physics instructor was not arbitrary, capricious, or contrary to law. 596 F.3d 1115, 1120-21 (9th Cir. 2010). Importantly, the court held that the petitioner satisfied only two of the ten categories of alternative evidence set forth at 8 CFR 204.5(h)(3)(i)-(x) and dismissed the appeal of Dr. Kazarian's denied EB-1A petition on those grounds. *Id*. at 1117-18.

28. In so holding, the *Kazarian* court found that Dr. Kazarian had submitted evidence in two categories, and so did not meet the regulatory requirement (evidence of a one-time achievement or satisfaction of three alternative categories of evidence). In finding that the plaintiff had met two of the alternative evidentiary categories, the Ninth Circuit stated that the concerns of the USCIS Administrative Appeals Office ("AAO") that the evidence submitted in those was insufficiently prestigious "might be relevant to a final merits determination" but did not support a finding that evidence in those categories had not been submitted at all. This twice-appearing clause in the Ninth Circuit decision was dicta, as it was not necessary as part of the legal reasoning for the final holding (that the plaintiff failed to meet the alternative evidentiary requirements per the 1991 regulation).

29. As in earlier cases, the *Kazarian* court itself highlighted that USCIS cannot impose a higher burden on petitioners than that contained in the plain meaning of the statute and regulations, stating, "neither USCIS nor the AAO may unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 CFR § 204.5." *Id*. at 1121-1122 (*citing Love Korean Church v. Chertoff*, 549 F.3d 749, 758 (9th Cir. 2008)).

30. The *Kazarian* case contains no further mention of a "final merits determination" nor any discussion of what such a determination might entail.

31. On December 22, 2010, the Defendant adopted the Ninth Circuit dicta in *Kazarian* as nationwide policy. *See* USCIS, Policy Mem. 602-0005.1, Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the Adjudicator's Field Manual (AFM) Chapter 22.2, AFM Update AD11-4 (2010). The *Kazarian* policy memorandum has now been incorporated into the USCIS Policy Manual. *See* USCIS Policy Manual, Volume 6, Part F., Chapter 2, B(2).[3]

32. The *Kazarian* policy, which did not undergo notice and comment, required a new, second step "final merits determination," in which the Defendant purports to weigh the totality of the evidence to determine if the Petitioner has demonstrated that the Beneficiary has extraordinary ability. The supposed intent behind the adoption of the *Kazarian* policy was that "USCIS believes that this approach will lead to decisions that more clearly explain how evidence was considered, the basis for the overall determination of eligibility (or lack thereof), and greater consistency in decisions on petitions for aliens with extraordinary ability."

33. Despite the fact that some federal courts since have held that the *Kazarian* policy was not a substantive change to the legal standard, the *Kazarian* policy memorandum itself states, "USCIS agrees with the *Kazarian* court's two-part adjudicative approach to evaluating evidence submitted in connection with petitions for aliens of extraordinary ability…By contrast, the approach taken by USCIS officers in *Kazarian* collapsed these two parts and evaluated the evidence at the beginning stage of the adjudicative process, with each type of evidence being evaluated individually to determine whether the self-petitioner was extraordinary."

34. In other words, the Defendant itself frames the *Kazarian* "final merits determination" as a second step of the extraordinary ability analysis implemented by the Ninth

[3] *See* https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-2 (last visited on August 8, 2025).

Circuit Court of Appeals rather than a restatement or interpretation of existing law. However, no such statement or holding exists in the *Kazarian* decision, and even if it did, it would have merely persuasive authority in the Eighth Circuit. As explained further below, the Defendant agency's nationwide adoption of the *Kazarian* policy is ultra vires.

35. The Defendant's stated goal behind implementation of the *Kazarian* Policy Memorandum was, in part, to provide "greater consistency in decisions on petitions for aliens with extraordinary ability." In fact, the opposite has been true. In fact, the *Kazarian* Policy Memorandum as now incorporated into the USCIS Policy Manual has resulted in widespread abuses of discretion by the agency in recent years, and has caused a significant increase in litigation against the agency. Thus, the Defendant's ultra vires adoption of an undefined second step "final merits determination" unnecessarily burdens the federal courts and the U.S. Department of Justice, and significantly increases the uncertainty, time and expense of those seeking extraordinary ability classification.

36. On December 29, 2011, the USCIS Ombudsman issued a report entitled "Recommendations to Improve the Quality in Extraordinary Ability and Other Employment-Based Adjudications." *See* USCIS Ombudsman Report. In that report, the USCIS Ombudsman stated, "[p]rior to and following implementation of this policy, stakeholders raised concerns about consistency in these adjudications. Recent concerns have focused on the subjective nature of a final merits determination. Stakeholders report that the I-140 policy memo has not resulted in a clearer adjudicatory standard," and "[s]takeholders report that petitions adjudicated under the I-140 policy memo have resulted in decisions that are unfair, opaque and inconsistent." *Id.* at pp. 2-3.

37. The USCIS Ombudsman, after reviewing a year of adjudications subsequent to the implementation of the policy, advised that the agency should: (a) conduct formal rulemaking to clarify the regulatory standard, and if desired, explicitly incorporate a final merits

determination into the regulations; (b) provide public guidance on the application of a final merits determination, stating that "[a] clearly delineated objective standard for evaluating the totality of the supporting evidence is essential to any two-part evidentiary test," "[o]therwise, the adjudication can become overly subjective and possibly circular; and (c) provide adjudicating officers with additional guidance and training on the proper application of preponderance of the evidence standard when adjudicating EB-1-1 (extraordinary ability), EB-1-2, and EB-2 petitions. *Id.* The Defendant agency for all intents and purposes ignored the USCIS Ombudsman's flagging of the issue with these petition adjudications and has continued on the same trajectory for almost 13 years.

38. There is a larger, troubling pattern of the Defendant's abuse of the *Kazarian* policy to deny immigrant visa petitions that should in fact have been approved at the agency level without the need for federal litigation. The Plaintiff intends to seek discovery with regard to this issue in challenging the *Kazarian* policy.

39. The Ninth Circuit has not addressed the Defendant's interpretation of its holding in *Kazarian* nor the lawfulness of the subsequent policy. The only Circuit Court of Appeal to rule on the lawfulness of the *Kazarian* policy to date is the Fifth Circuit in *Amin v. Mayorkas*, 24 F.4th 383 (5th Cir. 2022).

40. Subsequent to the Fifth Circuit's decision in *Amin*, however, on June 28, 2024, the Supreme Court of the United States issued a landmark decision in *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024) overturning C*hevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In overturning the *Chevron* deference doctrine, the Supreme Court held that the Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and may not defer to an agency interpretation of the law simply because a statute is ambiguous.

41. It is Plaintiff Trajano's petition that the statute is unambiguous, and should be interpreted in light of the clear intent of Congress and the plain language dictionary meaning of "extraordinary." Thus, not only is the *Kazarian* policy ultra vires, the implementing regulations also impermissibly narrow the scope of those who qualify.

42. In visa petition proceedings, the burden is on the petitioner to establish eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). The standard of proof in most administrative immigration proceedings, and the one that is applicable in this case, is a "preponderance of the evidence." *See Matter of Chawathe*, 25 I&N Dec. 369 (AAO 2010).

43. The "preponderance of the evidence" requires a petitioner or applicant to show that it is "more likely than not" a claim is true based on "relevant, probative and credible evidence." *Matter of Chawathe*, 25 I&N Dec. at 376.

44. In other words, the preponderance of the evidence standard means that the petitioner must submit evidence that demonstrates her claim is "probably true." The petitioner satisfies the standard of proof if the evidence leads the adjudicator to believe that the claim is "more likely than not" or "probably" (i.e., a greater than 50% likelihood) true (even though there might be some minor doubts). *see* USCIS Policy Manual, Vol. 1, Part E, Ch. 4.[4]

## V. FACTS

45. On February 10, 2024, Plaintiff filed Form I-140 in the EB-1A category (extraordinary ability in the arts—tattoo artistry) under Receipt No. SRC2390080215. USCIS issued a Request for Evidence (RFE) on March 29, 2024 (*See* Exhibit C); Plaintiff timely responded on June 24, 2024 with extensive documentation (*See* Exhibit D). The agency's decision acknowledges the RFE and response on the face of the record (Exhibit E, pp. 6-7).

[4] *See* https://www.uscis.gov/policy-manual/volume-1-part-e-chapter-4 (last visited on July 26, 2024).

46. USCIS then issued a September 10, 2024 denial. In its own analysis, the agency **expressly credited** multiple regulatory criteria under 8 C.F.R. § 204.5(h)(3)—including lesser nationally or internationally recognized awards, service as a judge of the work of others, original contributions of major significance, and display of work at artistic exhibitions or showcases (Exhibit E, pp. 6–8). Having found that **Plaintiff met at least three criteria** (indeed, four on the face of the decision), USCIS nevertheless concluded on the final-merits prong that Plaintiff had not shown he is among the small percentage at the very top of the field with sustained national or international acclaim (Exhibit E, p. 8).

47. Critically, the RFE neither identified any deficiency nor requested additional evidence regarding the "**leading or critical role**" criterion, and it gave no notice of any perceived shortcoming in the final-merits determination. Therefore, by remaining silent on the "leading or critical role" criterion and the final-merits theory, the RFE failed to put Plaintiff on notice that further evidence was required. USCIS's subsequent denial on those un-noticed bases deprived Plaintiff of a fair opportunity to present targeted, dispositive evidence. Yet USCIS denied the petition for failure to satisfy that criterion and on other bases never noticed in the RFE, thereby depriving Plaintiff of a fair opportunity to submit targeted, dispositive evidence on the very issues the agency later deemed determinative. That approach conflicted with USCIS's own two-step adjudicatory framework under *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010)—which requires a reasoned, criteria-by-criteria analysis followed by a transparent final-merits weighing—because the agency both (1) **credited multiple criteria** and (2) denied at the final-merits step without prior notice or a reasoned engagement with the record as a whole.

48. Because the March 29, 2024 RFE expressly itemized other issues yet remained silent on the "**leading or critical role**" criterion, USCIS effectively conceded that the record was adequate on that element at that stage. Plaintiff reasonably relied on that issue-framing and focused his supplemental evidence accordingly. The agency's later denial for an alleged failure to

establish "leading or critical role"—without first issuing a NOID or supplemental RFE—constituted a *post-hoc pivot* that deprived Plaintiff of notice and a meaningful opportunity to respond, in violation of the APA's reason-giving and procedural requirements. See 5 U.S.C. §§ 555(e), 706(2)(A), (D). By delineating specific deficiencies in its RFE and remaining silent on the "leading or critical role" criterion, **USCIS constructively conceded that this element was satisfied on the then-existing record.** The agency cannot later pivot to deny on a ground it declined to raise for rebuttal; the criterion should therefore be deemed established in this adjudication.

49. The plaintiff promptly sought administrative review. He filed Form I-290B (Motion to Reopen and/or Reconsider), supported by expert opinions and record citations; the motion package was signed on September 17, 2024 and transmitted with counsel's cover on September 24, 2024 (I-290B & G-28, pp. 2–4; counsel letter dated Sept. 24, 2024). In the I-290B, Plaintiff challenged USCIS's denial on both substantive and procedural grounds, expressly alleging violations of constitutional due process. Specifically, Plaintiff argued that by denying the petition on the "leading or critical role" criterion under 8 C.F.R. § 204.5(h)(3)(viii)—a ground never raised in the March 29, 2024 RFE—USCIS deprived him of the basic constitutional right to notice and a fair opportunity to respond. Because the RFE was silent, Plaintiff reasonably relied on that silence as a constructive concession that the record was sufficient on that point. By later pivoting to deny the petition on this unraised criterion, the agency foreclosed any chance for Plaintiff to submit targeted rebuttal evidence. The I-290B further explained that under 8 C.F.R. § 204.5(h)(3), satisfaction of at least three criteria is sufficient to meet the Step One threshold. By regulation, an EB-1A petitioner qualifies at Step One if at least three of the ten evidentiary criteria are met. Plaintiff met this statutory minimum—and more**.** Here, the record established not only three criteria (as even USCIS acknowledged) but also a fourth—the "critical role" criterion—which must be deemed met.

50. Despite these arguments, on April 9, 2025, the Administrative Appeals Office dismissed the motion, effectively affirming the denial by reiterating that, notwithstanding the multiple satisfied criteria, the agency believed the final-merits showing remained insufficient. Critically, the AAO did not engage the due process violation stemming from the RFE's silence, disregarded Plaintiff's argument that the "leading or critical role" criterion was constructively conceded, and offered no meaningful analysis of the extensive evidence highlighted in the motion. Instead, the AAO summarily repeated the denial without addressing Plaintiff's constitutional arguments or reconciling its conclusion with the record. In short, both adjudicators found that Plaintiff met the objective threshold (**three-criteria showing**) but then denied at the final-merits step without reasoned explanation, without prior notice of the dispositive issues, and without grappling with material evidence—hallmarks of action that is ***arbitrary, capricious, and contrary to law*** under 5 U.S.C. § 706.

## VI. CAUSES OF ACTION

### COUNT I – Agency Action Unlawful Under APA, 5 U.S.C. § 706(2)(A)

51. Plaintiff realleges and incorporates by reference the foregoing paragraphs.

52. Plaintiff Trajano submitted his petition for classification as an extraordinary ability immigrant with evidence of satisfaction of at least three of the alternative regulatory criteria. As noted above, after the submission of additional evidence, Defendant denied Plaintiff Trajano's petition, stating that he did not demonstrate that he was among the "small percentage who have risen to the very top of the field."

53. Defendant "may [not] unilaterally impose novel substantive or evidentiary requirements beyond those set forth at 8 CFR § 204.5." *Kazarian v. U.S. Citizenship and Immigration Servs.*, 596 F.3d 1115, 1121 (9th Cir. 2010). Defendant has arbitrarily and

capriciously imposed a requirement with no regard to the documentation already submitted by the Plaintiff.

54. Under the "arbitrary and capricious" standard, the court reviews whether an agency "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation omitted). *See also Residential Finance Corp. v. USCIS*, 839 F. Supp. 2d 985, 996-97 (S.D. Ohio 2012) (holding that USCIS made "inexplicable errors" constituting a "litany of incompetence that presents fundamental misreading of the record, relevant sources, and the point of the entire petition" and thus "failed to examine all of the correct relevant data and to articulate an untainted, satisfactory explanation for the denial that rationally connected the facts to the decision." *Id.*

55. An agency's decision is not arbitrary or capricious and must be upheld unless the record reflects "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise." *See Sandahl Farms v. Farm Serv. Agency of the USDA*, 2018 U.S. Dist. LEXIS 230803 at 29-30 (August 21, 2018) (*quoting McClung v. Paul*, 788 F.3d 822, 828 (8th Cir. 2015) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. at 43)).

56. If the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made," its decision must be upheld. *See Sandahl Farms*, 2018 U.S. Dist. LEXIS 230803 at 30 (*quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*, 462 U.S. 87, 105, 103 S. Ct. 2246, 76 L. Ed. 2d 437 (1983)).

57. Further, facts found by the agency need only be supported by "substantial evidence" in the record in order to meet the APA's standard. 5 U.S.C. § 706(2)(E). "The phrase 'substantial evidence' does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See Sandahl Farms*, 2018 U.S. Dist. LEXIS 230803 at 30 (*quoting Pierce v. Underwood*, 487 U.S. 552, 564-65, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).

58. The standard of review for substantial evidence "is a narrow one and the court is not permitted to substitute its judgment for that of the agency." *Id.* (*quoting Dawson Farms v. Risk Mgmt. Agency*, 698 F.3d 1079, 1083 (8th Cir. 2012) (*quoting United States v. Massey*, 380 F.3d 437, 440 (8th Cir. 2004)).

59. Defendant's denial of Plaintiff Trajano's I-140, Immigrant Petition for Alien Worker for classification as an "alien of extraordinary ability" for immigrant visa purposes is arbitrary, capricious and contrary to law because the agency's factual findings and decision are not supported by "substantial evidence." *See* 5 U.S.C. § 706(2)(E).

60. Upon a finding that the Plaintiff has met three of the alternative evidentiary criteria, the Defendant should be directed to adjudicate the Plaintiff's petition under the plain and unambiguous language of the statute and regulations, if applicable, without applying the vague and undefined "final merits determination" second step. In the alternative, prior to remand, the Plaintiff requests that the Defendant be required to define the "standard" of the "final merits determination" to the Court as it is wholly unclear what the "standard" is and how it may be satisfied.

61. Defendants' denial and dismissal were arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).

62. The decision failed to give reasoned consideration to the evidence and applied a subjective, non-transparent standard without clearly articulating how the Plaintiff's accomplishments fell short.

63. The appellant asserts that the denial decision failed to provide a detailed analysis or specific reasons for concluding that he did not meet the required criteria. The decision was generic and omitted essential legal reasoning, effectively disregarding all the substantial evidence submitted into the record. Specifically, the appellant furnished extensive documentation demonstrating that he meets the criterion of having made original scientific, scholarly, artistic, or business-related contributions of major significance in his field. The denial notice ignored this evidence and failed to specify any reasons for its conclusion, thereby constituting a failure to develop the record properly.

64. By neglecting to address the evidence and failing to articulate specific reasons for the denial, the agency did not meet the required standards for decision-making.

**COUNT II – Failure to Follow Established Legal Standard (*Kazarian* Framework)**

Defendants have failed to apply the proper legal standard required in adjudications of EB-1A immigrant visa petitions, specifically the two-step framework set forth in *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010). Under *Kazarian*, the adjudicator must first determine whether the petitioner meets at least three of the ten regulatory criteria listed at 8 C.F.R. § 204.5(h)(3). Only if that threshold is met does the adjudicator proceed to the second step—a final merits determination assessing whether the petitioner has demonstrated a level of expertise indicating sustained national or international acclaim and that the individual is among the small percentage who have risen to the very top of the field of endeavor.

Here, Plaintiff provided substantial and undisputed evidence that he meets five of the ten regulatory criteria under Step One. Although USCIS stated that Plaintiff met only three regulatory criteria, that conclusion was erroneous. By itemizing other perceived deficiencies yet

remaining silent as to the "leading or critical role" criterion (8 C.F.R. § 204.5(h)(3)(viii)), the March 29, 2024 RFE constructively conceded that element; properly counted, Plaintiff satisfied **at least four criteria** at Step One, obligating the agency to proceed to Step Two and issue a reasoned final-merits determination consistent with *Kazarian* and the USCIS Policy Manual.

However, Defendants misapplied or altogether bypassed the proper *Kazarian* Step Two analysis. The agency's final decision failed to offer a reasoned explanation or meaningful engagement with the record evidence to support its conclusion that Plaintiff did not possess the requisite level of acclaim or standing in the field. The denial relied on conclusory statements and failed to articulate a rational connection between the facts found and the decision reached, as required under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A).

Moreover, Defendants improperly applied an evidentiary standard or expectation not contemplated by the governing regulations, thereby engaging in arbitrary and capricious decision-making. The decision reflects a departure from established adjudicatory norms and improperly second-guesses the significance of evidence already accepted as satisfying the regulatory criteria. In doing so, the agency has exceeded its statutory authority, misinterpreted its own regulations, and unlawfully imposed extra-regulatory requirements.

The agency's analysis lacked a rational connection between the facts found and the conclusion reached. The Plaintiff was thereby prejudiced by Defendants' failure to properly apply the Kazarian framework and is entitled to relief under the APA.

**COUNT III – Agency Action Without Observance of Procedure Required by Law (5 U.S.C. § 706(2)(D))**

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

Under the Administrative Procedure Act (APA), agency actions must be set aside when they are taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). In the

context of EB-1A adjudications, the U.S. Citizenship and Immigration Services (USCIS) is bound to follow its own regulations, internal guidance, and applicable precedent decisions, including those that require a full and fair assessment of all evidence submitted and a holistic evaluation of the petition under the totality of the circumstances.

In this case, Defendants failed to observe these required procedures. Plaintiff submitted extensive documentation demonstrating national and international acclaim, including evidence explicitly satisfying five of the ten criteria under 8 C.F.R. § 204.5(h)(3). Despite this, the agency did not properly evaluate the totality of the evidence in making its final merits determination, as required by established USCIS adjudication policy and case law interpreting Kazarian v. USCIS, 596 F.3d 1115 (9th Cir. 2010), and subsequent guidance.

Rather than conducting a comprehensive and qualitative analysis of the full record, Defendants engaged in piecemeal assessments of individual exhibits, dismissing significant accomplishments and documentation without weighing their cumulative probative value. USCIS's own Policy Manual directs adjudicators to evaluate all relevant evidence in a holistic manner, taking into account the context and significance of each piece of evidence as it relates to the petitioner's acclaim and standing in the field.

Moreover, USCIS precedent decisions—such as Matter of V-K- and Matter of M-P-—reinforce the requirement that once a petitioner meets the threshold number of regulatory criteria, the agency must proceed to a fair and well-reasoned final merits determination, weighing the totality of evidence. The agency's failure to apply these procedural safeguards constitutes a deviation from established adjudicatory norms and renders its decision unlawful under the APA.

Defendants failed to follow established USCIS policy and precedent decisions in their adjudication, including the requirement to weigh the totality of evidence submitted. As a direct result of Defendants' failure to follow required procedure, Plaintiff was prejudiced by an

adjudication that was not conducted in accordance with law. Plaintiff therefore seeks review and relief under 5 U.S.C. § 706(2)(D).

**COUNT IV- APA: Arbitrary, Capricious, and Without Observance of Procedure Required by Law (Failure to Provide Notice and Opportunity to Respond)**

USCIS violated the APA's procedural and reason-giving requirements by denying Plaintiff's I-140 on grounds not noticed in the RFE, including an alleged failure to satisfy the "**leading or critical role**" criterion, 8 C.F.R. § 204.5(h)(3)(viii), and a new final-merits theory. The APA requires agencies to provide a statement of reasons and to observe procedures that afford affected parties a meaningful opportunity to respond. 5 U.S.C. §§ 555(e), 706(2)(D); see also *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (agency must consider important aspects and provide a reasoned explanation); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (no post-hoc rationalizations on review).

Here, USCIS issued an RFE that itemized other alleged deficiencies but was silent as to any shortcoming in the "**leading or critical role**" criterion and gave no notice that a final-merits rationale would control the outcome. Plaintiff reasonably relied on that issue-framing and directed his supplemental submission to the matters the agency actually raised. USCIS then shifted the ground of decision in the denial, faulting Plaintiff on an unraised criterion and on a new final-merits theory, without first issuing a NOID or supplemental RFE to permit targeted rebuttal evidence. That "ambush" approach frustrated meaningful participation and deprived Plaintiff of a fair opportunity to respond, in violation of 5 U.S.C. §§ 555(e), 706(2)(D).

The error was prejudicial. Had USCIS provided notice that the "leading or critical role" criterion or a final-merits theory would be dispositive, Plaintiff would have submitted targeted, dispositive evidence tailored to those grounds. See 5 U.S.C. § 706 (court must take due account of the rule of prejudicial error). The AAO failed to cure the defect when it dismissed the I-290B

without addressing this specific procedural objection, leaving the agency's path unreasonable and indiscernible. See *Camp v. Pitts,* 411 U.S. 138, 142–43 (1973).

Because the **RFE's silence constructively conceded the "leading or critical role" criterion,** USCIS should have treated at least four criteria as satisfied at Step One and then conducted a reasoned final-merits analysis under the *Kazarian* two-step framework. The agency's denial, premised on unnoticed grounds and lacking a reasoned final-merits explanation, must be vacated and remanded under 5 U.S.C. § 706(2)(A), (D), with instructions to treat the criterion as established (consistent with the RFE's silence) and perform a lawful Step-Two analysis.

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court:

A. Declare that Defendants' denial of Plaintiff's Form I-140 and dismissal of the Form I-290B are unlawful under the Administrative Procedure Act, 5 U.S.C. § 706;

B. Set aside those agency actions as arbitrary, capricious, an abuse of discretion, and issued without observance of procedure required by law;

C. Order USCIS to approve Plaintiff's Form I-140 because the administrative record compels the conclusion that Plaintiff satisfied the requisite regulatory criteria and the final-merits standard, leaving no lawful basis for denial;

D. Award reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

G. Grant such other and further relief as the Court deems just and proper.

*[SIGNATURE IN THE FOLLOWING PAGE]*

Respectfully submitted,

Clarissa Moraes Kalil, Esq.
The Law Office of Clarissa M. Kalil
129 Concord St, Suite 1
Framingham, MA 01702
Tel: (857) 218-0400
MA Bar No.: 714777
MO Bar No.: 71440

*Counsel for Plaintiff*

**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DA SILVA TRAJANO, TIAGO**<br>*Plaintiff,*<br>*v.*<br>**U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.**<br>*Defendants.* | ) | **Civil Action No.: To be assigned** |

**CERTIFICATE OF SERVICE**

I, Clarissa M. Kalil, Esq., counsel of record for Plaintiff, hereby certify that on August 29, 2025, the foregoing **"Complaint for Declaratory and Injunctive Relief under the Administrative Procedure Act"** was electronically filed through the Court's CM/ECF system, which will serve notice of such filing on all registered participants. Parties not registered to receive electronic service via CM/ECF will be served with the Summons and Complaint in accordance with Fed. R. Civ. P. 4.

Respectfully submitted,

Clarissa Moraes Kalil, Esq.
The Law Office of Clarissa M. Kalil
129 Concord St, Suite 1
Framingham, MA 01702
Tel: (857) 218-0400
MA Bar No.: 714777
MO Bar No.: 71440
*Counsel for Plaintiff*