**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| **TIAGO DA SILVA TRAJANO,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 25-12388-FDS** |
| **U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al.,** | ) ) ) | |
| **Defendants.** | ) ) ) | |

**MEMORANDUM AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**SAYLOR, J.**

This is an action challenging the denial of an immigration petition. Plaintiff Tiago da Silva Trajano is a tattoo artist from Brazil who currently resides in the United States. He filed an I-140 petition with U.S. Citizenship and Immigration Services seeking "extraordinary ability," or EB-1, classification on the basis of his skills and experience as a tattoo artist. The agency denied his petition, and that denial was affirmed by the agency's Administrative Appeals Office. He then filed suit in this court against the agency and several other defendants, contending that the denial of his petition was arbitrary or capricious and not in accordance with procedures required by law. Both plaintiff and defendants have now moved for summary judgment.

The record before the Court establishes that plaintiff has extensive experience as a tattoo artist and has received some degree of recognition within the field. Indeed, he may even be an

outstanding tattoo artist.  But the EB-1 classification, colloquially known as the "Einstein visa,"[1] requires more than simply achieving some degree of acclaim within a field.  It requires that a noncitizen be "one of that small percentage who have risen to the very top of the field of endeavor."  8 C.F.R. § 204.5(h)(2).  And particularly when considered in the deferential posture of judicial review of administrative fact-finding, the Court cannot conclude that the agency's determination that plaintiff did not meet that standard was arbitrary or capricious.

To be clear, the question before this Court is not whether the agency determination was correct, or whether the Court agrees with it.  Nor is the question whether the decision was compassionate or humane.  Rather, it is whether, within the constrained framework of the applicable law, the decision must be reversed.  Because the Court cannot conclude that it must, defendants' motion for summary judgment will be granted and plaintiff's motion will be denied.

## I.    Background

### A.    Legal Framework

Federal law provides that the EB-1 classification is available to a noncitizen who "has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation."  8 U.S.C. § 1153(b)(1)(A)(i).  A regulation further sets out the qualifications required for the EB-1 classification.  *See* 8 C.F.R. § 204.5(h).  It defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  *Id.* § 204.5(h)(2).  It further provides that a petition for EB-1 classification must

---

[1] *See, e.g.*, Joel Gunter, *What is the Einstein Visa?  And How Did Melania Trump Get One?*, BBC (Mar. 2, 2018), https://www.bbc.com/news/world-us-canada-43256318 [https://perma.cc/K2YL-MEKK].

either be accompanied by evidence of "a one-time achievement (that is, a major, international recognized award)" or at least three of the following:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

*Id.* § 204.5(h)(3).

The EB-1 classification provides several advantages over other employment-based classifications. Among other things, its holders need not "prove that they have a job waiting for them in the United States," nor does the "Department of Labor [need to] certify that their employment will not disadvantage similarly employed Americans." *Amin v. Mayorkas*, 24 F.4th

383, 387 (5th Cir. 2022).  In addition, "the priority date of extraordinary ability visas is always current, meaning visa holders avoid the years-long waiting periods that apply to most other employment-based immigration categories."  *Id.*

### B.    Factual Background

Tiago da Silva Trajano is a tattoo artist from Brazil.  On February 10, 2023, he submitted an application for EB-1 "extraordinary ability" classification to USCIS.  (R. at 1-720).

In his initial application, plaintiff contended that he satisfied five of the criteria at § 204.5(h)(3):  "receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor"; "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specialization for which classification is sought"; "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field"; "the display of [his] work in the field at artistic exhibitions or showcases"; and "perform[ance in] a leading or critical role for organizations or establishments that have a distinguished reputation."  (R. at 33-34).

On March 29, 2024, USCIS responded to plaintiff's application with a "Request for Evidence."  (R. at 722).  The Request for Evidence indicated that the application was deficient as to three of the four criteria he sought to satisfy, and therefore invited him to submit additional evidence as to "receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor"; "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field"; and "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field."  (R. at 724-26).[2] The Request for Evidence also noted that "meeting the minimum regulatory criteria outlined

---

[2] The Request for Evidence did not discuss the "leading or critical role" criterion.  (R. at 722-28).

above[] alone will not establish eligibility for the E11 immigrant classification.  Any evidence submitted in response to this request[] should also articulate how the evidence establishes that the petitioner possess the required high level of expertise for the E11 immigrant classification." (R. at 727).[3]  In response, plaintiff provided additional documentation.  (R. at 743-1054).

On September 10, 2024, the Director of the Texas Service Center of USCIS issued a decision denying plaintiff's petition.  (R. at 1056-61).  In her decision, the director said that she would apply the two-step framework set out by the Ninth Circuit in *Kazarian v. United States Citizenship & Immigration Services*, 596 F.3d 1115 (9th Cir. 2010).  First, she would evaluate whether plaintiff had presented evidence either of "a one-time achievement (a major internationally recognized award)" or met "at least three criteria" set out in § 204.5(h)(3).  (R. at 1058).  If that threshold showing was made, she would then evaluate whether "[plaintiff] is one of the small percentages who have risen to the very top of the field of endeavor" and whether "[plaintiff] has sustained national or international acclaim in the field."  (*Id.*).

At the first step of the analysis, the director found that plaintiff satisfied three criteria. She found that he had submitted evidence of "receipt of lesser nationally or internationally recognized prizes for awards for excellence"; "participation, either individually or on a panel, as a judge of the work of others in the same or allied field"; and "display of the petitioner's work in the field at artistic exhibitions or showcases."  (R. at 1058-59).  She also found that he had failed to submit sufficient evidence to satisfy the criterion of "original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field," and that he had submitted no evidence to satisfy the "leading or critical role" criterion.  (R. at 1059-60).

---

[3] "E11 is another name for the EB-1 visa."  *Paul v. Edlow*, 2026 WL 1494095, at *6 n.3 (C.D. Ill. May 28, 2026).

5

Nonetheless, because plaintiff had satisfied three of the necessary criteria, the director then moved to step two of the analysis.

At the second step, the director found that plaintiff had failed to meet the requirements for EB-1 classification.  (R. at 1060).  Although she found that "petitioner is a talented and accomplished professional," she noted that "the classification of extraordinary ability" is given only "to those very few at the top of their field of endeavor."  (*Id.*).  Reviewing the articles plaintiff submitted concerning recognition of his work, she noted that the articles were "not sufficient evidence of 'extensive documentation' to establish that the petitioner has achieved sustained acclaim."  (*Id.*).  As for the letters plaintiff submitted from others in the field, the director noted that although "[t]he letters compliment [plaintiff's] artistic techniques," the letters "do not provide specific detail[ed] examples of how [plaintiff's] artistic techniques ha[ve] been of major significance to the field."  (*Id.*).  Finally, she noted that "while [plaintiff] is undoubtedly skilled and successful within the Tattoo Artist industry," USCIS had "long held that even athletes performing at the major league level do not automatically meet the 'extraordinary ability' standard."  (*Id.* (citing *Matter of Price*, 20 I&N Dec. 953, 954 (Assoc. Comm'r 1994))).  Accordingly, she found that plaintiff "has not shown that the significance of his artistic work is indicative of the required sustained national or international acclaim or that it is consistent with a 'career of acclaimed work in the field' as contemplated by Congress" and denied the petition.  (*Id.*).

Plaintiff then appealed the initial decision to the Administrative Appeals Office of USCIS.  (R. at 1077).  On April 9, 2025, after reviewing the matter *de novo*, the Administrative Appeals Office denied the appeal.  (R. at 1127-33).  Setting forth the operative legal standard, the AAO stated that

[t]he implementing regulation at 8 C.F.R. § 204.5(h)(3) sets forth a multi-part analysis. First, a petitioner can demonstrate sustained acclaim and recognition of their achievements in the field through a one-time achievement (that is, a major, internationally recognized award).  If th[e] petitioner does not submit this evidence, then they must provide sufficient qualifying documentation that meets at least three of the ten criteria listed at 8 C.F.R. § 204.5(h)(3)(i)-(x). . . .  Where a petitioner meets these initial evidence requirements, we then consider the totality of the material provided in a final merits determination and assess whether the record shows sustained national or international acclaim and demonstrates that the individual is among the small percentage at the very top of the field of endeavor.

(R. at 1128-29).

At the first step of the analysis, although plaintiff contended that he satisfied more criteria than the director specifically addressed, the AAO declined to address the issue because he had "already shown that he fulfills the minimum requirements of at least three criteria."  (R. at 1129).

The AAO therefore focused its analysis at step two, considering whether plaintiff had shown that he "1) has sustained national or international acclaim; 2) is one of the small percentage at the very top of the field of endeavor; and 3) his achievements have been recognized in the field through extensive documentation." (*Id.*).  Applying that standard, the AAO found that he "has not demonstrated eligibility as an individual of extraordinary ability." (R. at 1130).

The AAO first examined the evidence concerning the awards plaintiff had received. (*Id.*). It noted that although he provided some letters "offering background information about the events" at which he received the awards, the information he provided did not show how the awards "establish[ed] that he his among that small percentage at the very top of the field, nor do they show that [plaintiff] garnered national or international acclaim." (*Id.*).  The AAO also reiterated that "USCIS has long held that even athletes performing at the major league level do not automatically meet the statutory standards for classification as an individual of 'extraordinary ability,'" citing the decision in *Matter of Price*. (*Id.*).

Next, the AAO examined the evidence plaintiff submitted concerning his participation in a philanthropic event and the two books he published. (R. at 1131). The AAO noted that "[plaintiff] has not explained how the sale of 104 copies of his book has impacted his industry nor is there evidence, beyond the support letters on record, showing that either publication has been 'widely acclaimed,' as asserted on appeal." (*Id.*). And, whether considered individually or together with his participation in the philanthropic event, the AAO found that this evidence did not "reflect a career of acclaimed work in the field." (*Id.*).

The AAO then turned to plaintiff's service as a judge of the work of others. (R. at 1131-32). The AAO noted that he served as a judge at six conventions and expos between 2018 and 2021, and that he attested that "invitations to judge a competition 'are generally issued by prestigious event organizers who select judge based on artistic excellence and significant contributions to the tattoo community.'" (R. at 1131). But the AAO found that the evidence plaintiff provided failed to explain the criteria used to select judges, only "discuss[ing] the selection criteria in broad terms." (R. at 1131-32). "Without evidence that sets [plaintiff] apart from others in his field," the AAO found, "[plaintiff] has not shown that his judging experience places him among that small percentage who has risen to the very top of the field of endeavor." (R. at 1132). Finally, the AAO noted that, despite plaintiff's receipt of numerous awards, he "ha[d] not demonstrated the significance of his awards, individually or in the aggregate, such as prompting wide praise for his work from critics, drawing notable crowds, raising attendance, or resulting in the success of the events." (*Id.*).

For all those reasons, the AAO found that "[t]he record as a whole, including the evidence discussed above, does not establish [plaintiff's] eligibility for the benefit sought." (*Id.*). "While [plaintiff] need not establish that there is no one more accomplished to qualify for the

8

classification sought," it acknowledged, "the record is insufficient to demonstrate that he is among the small percentage at the top of his field."  (R. at 1133).

### C.    Procedural Background

Plaintiff filed the complaint in this matter on August 29, 2025.  (Dkt. No. 1).  He simultaneously moved for a temporary restraining order prohibiting the government from taking any adverse action on his application to adjust status while the case proceeded.  (Dkt. No. 4).  The parties eventually agreed that USCIS would reopen the denial of plaintiff's petition so that he would not lose his legal status while this case proceeded.  (*See* Dkt. No. 15).

Plaintiff filed an amended complaint on October 17, 2025, which the government answered on November 14, 2025.  (Dkt. Nos. 21, 25).

On January 9, 2026, plaintiff moved for summary judgment.  (Dkt. No. 30).  On February 6, 2026, the government cross-moved for summary judgment and opposed plaintiff's motion.  (Dkt. Nos. 32, 33).  Plaintiff filed a reply in support of his motion on February 12, 2026, and the government filed a reply in support of its motion on March 6, 2026.  The Court held a hearing on the motions on March 12, 2026.

Plaintiff also filed a motion for discovery outside the record on January 27, 2026, which the government opposed.  (Dkt. Nos. 31, 34).

## II.    Legal Standard

Summary judgment is ordinarily appropriate when the evidence shows that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  However, in cases involving review of agency action under the APA, the traditional Rule 56 standard does not apply due to the limited role of a court in reviewing the administrative record.  *See International Junior Coll. of Bus. & Tech., Inc. v. Duncan*, 802 F.3d 99, 106 (1st Cir. 2015) ("The summary judgment 'rubric' also 'has a special

twist in the administrative law context.'" (quoting *Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997))).  Rather, when administrative action is challenged under the APA "[s]ummary judgment . . . serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."  *Coe v. McHugh*, 968 F. Supp. 2d 237, 240 (D.D.C. 2013); *South Shore Hosp., Inc. v. Thompson*, 308 F.3d 91, 97-98 (1st Cir. 2002) ("That the parties brought the issues forward on cross-motions for summary judgment is not significant; substance must prevail over form, and the fact remains that the parties have presented this matter as a case stated[] on a fully developed administrative record.").

## III.    <u>Analysis</u>

The denial of an EB-1 classification petition by USCIS is a final agency action reviewable under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  *See Visinscaia v. Beers*, 4 F. Supp. 3d 126, 129-30 (D.D.C. 2013); *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1118 (9th Cir. 2010).  Under the APA, a court must "hold unlawful and set aside agency action" that is, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).  The Supreme Court recently reiterated the basic contours of arbitrary-and-capricious review:

> The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained.  Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency.  A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision.

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

Accordingly, it is not the Court's role to determine for itself whether plaintiff meets the criteria for the EB-1 classification.  Instead, it is to review whether USCIS's decision to deny his application was "reasonable and reasonably explained."  *Prometheus Radio Project*, 141 S. Ct. at 1158.  On the record before the Court, the answer to that question is clearly "yes."

As set forth above, a noncitizen must have "extraordinary ability in the sciences, arts, education, business, or athletics" to qualify for the EB-1 designation.  8 U.S.C. § 1153(b)(1)(A)(i).  The statute does not define "extraordinary ability," but it provides that such ability must be "demonstrated by sustained national or international acclaim" and that the applicant's "achievements" must have been "recognized in the field through extensive documentation."  *Id.*  "Extraordinary ability" is defined by regulation as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor."  8 C.F.R. § 204.5(h)(2).  "The extraordinary ability designation is thus extremely restrictive by design."  *Visinscaia*, 4 F. Supp. 3d at 131 (citation modified).  And even those who unquestionably excel in their fields and achieve some degree of international fame often fail to meet the stringent requirements for the EB-1 classification.  *See id.* at 136 (upholding agency's decision to deny EB-1 classification to competitive ballroom dancer who had won world junior championship); *Lee v. Ziglar*, 237 F. Supp. 2d 914, 915, 918 (N.D. Ill. 2002) (upholding agency's decision to deny EB-1 visa to "arguably one of the most famous baseball players in Korean history" where he sought to coach, rather than play, baseball); *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1117, 1122 (9th Cir. 2010) (upholding agency's decision to deny EB-1 classification to Ph.D.-holding theoretical physicist working with researchers at Caltech).

USCIS's determination that plaintiff did not satisfy those rigorous criteria is well-supported by the record.[4]  As the AAO explained, although plaintiff provided a great deal of evidence concerning his career and certain accolades he had received, he did little to situate those awards and accolades in context to show how they demonstrated extraordinary ability.  For example, it wrote that "[plaintiff] has not demonstrated the significance of his awards, individually or in the aggregate, such as prompting wide praise for his work from critics, drawing notable crowds, raising attendance, or resulting in the success of the events."  (R. at 1132).  Similarly, when discussing plaintiff's experience as a judge of others' work, the AAO wrote that "[w]ithout evidence that sets [plaintiff] apart from others in his field, [plaintiff] has not shown that his judging experience places him among that small percentage who has risen to the very top of the field of endeavor."  (*Id.*).

"Extraordinary ability," by definition, cannot be measured in the abstract, since extraordinary means "going beyond what is usual [or] regular."  *Extraordinary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/extraordinary [https://perma.cc/K67H-FB8R].  For example, coming in first place in the hundred-meter dash at an athletic competition might be a major accomplishment, but one would need to know whether it occurred at the Olympics or at a local track meet to know whether it shows that an individual possesses extraordinary ability as a sprinter.  Accordingly, without any evidence as to the relative significance of the recognition plaintiff received, the agency's determination that he failed to meet the requirements for EB-1 classification was not arbitrary or capricious.

---

[4] The decision of the AAO, rather than the initial decision of the Texas Service Center director, is the proper focus for the Court's review because that is the "*final* agency action" made reviewable by the APA.  5 U.S.C. § 704 (emphasis added).  The AAO's decision was "the consummation of the agency's decsionmaking process," and it is that decision by which plaintiff's "rights . . . have been determined."  *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

Plaintiff raises several objections to that conclusion that are ultimately unavailing. The first category of objections is that the agency improperly "conflated" the first and second steps of its analysis, or that it changed its position between these two steps of the analysis. (Pl.'s Mot. 9-14, Dkt. No. 30). Again, the agency first requires that an applicant either provide evidence of a "major, international recognized award" or evidence that satisfies at least three of the criteria set out at § 204.5(h)(3). Assuming those criteria are met, the agency then examines the record as a whole to determine whether an applicant has demonstrated that "the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2).[5]

Plaintiff contends that in applying that framework, USCIS inappropriately "collapsed the two steps" of the analysis because it "reweighed evidence that had already been credited at Step One and faulted [p]laintiff for purported deficiencies without explaining how those same facts, previously found sufficient to satisfy regulatory criteria, suddenly failed to support a finding of sustained acclaim." (Pl.'s Mot. 10). Other contentions raised in plaintiff's motion similarly argue that the agency changed position, or was otherwise inconsistent, in its treatment of plaintiff's evidence at the two steps of the analysis. (*Id.* at 11-14).

It is plaintiff's argument, not the agency's approach, that would collapse the two steps of the inquiry into one. Plaintiff appears to contend that the agency's decision to deny his application, despite having found that he satisfied the step one criteria, is somehow suspect. But the two steps of the analysis ask entirely different questions. Step one requires an applicant to

---

[5] Plaintiff and the agency sometimes refer to this as the *Kazarian* framework, after the Ninth Circuit's decision in *Kazarian v. U.S. Citizenship & Immigration Services*. In *Kazarian*, the Ninth Circuit set out the two-step framework explained above, but it did not create the framework from whole cloth; it simply interpreted the regulation codified at 8 C.F.R. § 204.5(h) as requiring that two-step analysis. This framework was later explicitly set out in USCIS's policy manual. *See* USCIS Policy Manual, Vol. 6, pt. F, ch. 2.

make relatively low threshold showings, but step two requires an applicant to demonstrate that he possesses "extraordinary ability."  Nothing in the text of the regulation or otherwise suggests that an applicant who satisfies the criteria at step one is presumptively eligible for EB-1 classification.  "If meeting the regulatory criteria was enough to establish one's acclaim, there would be no step two of the analysis." *Amin v. Mayorkas*, 24 F.4th 383, 395 (5th Cir. 2022).  And the agency clearly explained why the evidence that was sufficient to meet the criteria at § 204.5(h)(3) was nonetheless insufficient to show that he possessed "extraordinary ability," had garnered "sustained national or international acclaim," or that he was "one of that small percentage who have risen to the very top of the field of endeavor."  (R. at 1129-33).  Accordingly, the agency's conclusion that plaintiff failed to satisfy the requirements for an EB-1 classification, despite having met three of the criteria set out at § 204.5(h)(3), was not arbitrary or capricious.

Next, plaintiff contends that the agency's decision was arbitrary and capricious because it denied his petition on grounds that were not raised in the Request for Evidence issued in March 2024.  Plaintiff notes that the Request for Evidence did not mention the "leading or critical role" criterion, but that the agency denied his application, at least in part, because he failed to meet that criterion.  (Pl.'s Mot. 15-16).

Even assuming that plaintiff is correct on this point, any error appears to have been harmless.  The agency agreed that petitioner satisfied at least three of the criteria at § 204.5(h)(3) and therefore moved to step two of the analysis, at which it considered "the totality of the evidence" that plaintiff provided.  (R. at 1129).  Therefore, any error with respect to the agency's evaluation of the "leading or critical role" criterion was harmless, because it did not contribute to

14

the agency's ultimate decision to deny plaintiff's application.  *See Kazarian*, 596 F.3d at 1122; *Ali v. United States*, 849 F.3d 510, 514-15 (1st Cir. 2017).[6]

Next, plaintiff contends that the agency improperly applied a "heightened standard," or converted the standard into an "impermissible 'super-extraordinary' test."  (Pl.'s Mot. 16-17).  That contention also fails.  The language to which plaintiff points, including comparisons to the facts of other cases, simply reflects the agency's attempt to operationalize what it means for an individual to have "extraordinary ability" or to be "one of that small percentage who have risen to the very top of the field of endeavor," not the agency implementing a new, heightened standard.[7]

Finally, plaintiff contends for the first time in his reply brief that this Court should follow the decision of the District of Nebraska in *Mukherji v. Miller*, 2026 WL 895708 (D. Neb. Jan. 28, 2026), which found that the two-step procedure employed by USCIS, as memorialized in the USCIS policy manual, is unlawful because it is, in effect, a legislative rule adopted without notice-and-comment rulemaking.  *See id.* at *6.  Because plaintiff did not raise this issue in his opening motion, it is waived.  *See Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 473 (D. Mass. 2020).  But even if it were not waived, the two-step framework clearly follows from the text of the relevant regulation, which was itself adopted following notice-and-comment rulemaking.  *See* Employment-Based Immigrants, 56 Fed. Reg. 60897, 60906 (Nov. 29, 1991).

---

[6] In addition, the Request for Evidence explicitly stated that "meeting the minimum regulatory criteria outlined above alone will not establish eligibility for the E11 immigrant classification," and therefore plaintiff was on notice that merely satisfying the regulatory criteria was not enough to show that he was entitled to EB-1 classification.  (R. at 727).

[7] There is perhaps an argument that USCIS's definition of "extraordinary ability" at § 204.5(h)(2) does not reflect the best reading of the statute.  *But see Taneja v. Miller*, 2026 WL 1734266, at *4-6 (E.D.N.Y. June 16, 2026) (rejecting that contention).  But plaintiff does not make that argument; instead, he argues that the administrative record shows that the agency adopted some "heightened framing" beyond what is provided in the statute and regulation.  (Pl.'s Mot. 18; *see id.* at 16 (agreeing that the regulatory definition accurately reflects Congress's definition)).  Accordingly, the Court need not resolve this issue.

Section 204.5(h)(3) provides that a petition for EB-1 classification "must be accompanied by" evidence satisfying the regulatory criteria, but it does not state that satisfying those criteria necessarily means that an applicant has met the requirements for EB-1 classification. Instead, the regulation recognizes that an applicant must nonetheless show extraordinary ability, as defined at § 204.5(h)(2), to merit the classification. This clearly contemplates a two-step process in which satisfying the regulatory criteria is necessary, but not sufficient, to establish eligibility for the EB-1 classification, and the agency's two-step process operationalizes that requirement.

In sum, plaintiff has failed to show that USCIS acted in an arbitrary or capricious manner when it determined that he had nonetheless failed to demonstrate extraordinary ability under 8 U.S.C. § 1153(b)(1)(A) and 8 C.F.R. § 204.5(h)(3), or that the agency failed to observe any procedure required by law. Accordingly, plaintiff's motion for summary judgment will be denied, and the defendants' motion for summary judgment will be granted.[8]

## IV.    Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED. Plaintiff's motion for extra-record discovery is DENIED.

**So Ordered.**

---

[8] The Court will also deny plaintiff's motion for extra-record discovery. In an APA case, a court may order extra-record discovery only where (1) additional information is necessary "to facilitate [the court's] comprehension of the record or the agency's decision," such as where the decision "involv[es] highly technical, environmental matters," or (2) there has been "a strong showing of bad faith or improper behavior." *City of Taunton v. U.S. EPA*, 895 F.3d 120, 127 (1st Cir. 2018) (citation modified); *see also Department of Comm. v. New York*, 139 S. Ct. 2551, 2573-74 (2019) (noting that extra-record discovery justified only on "strong showing of bad faith or improper behavior"). This is not a case where additional information is needed to facilitate the Court's understanding of the record, and plaintiff is unable to make a "strong showing of bad faith or improper behavior." His argument for extra-record discovery essentially repackages his argument concerning the purported "inconsistency" between the agency's step one and step two determinations that the Court considered and rejected above. Accordingly, extra-record discovery is not warranted here.

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  July 24, 2026                    United States District Judge